Thank you, your honors. Good morning, justices, opposing counsel. I'm Winter Campanella and I represent the appellant, Daniel Whitehead. Before you today are four issues. The first issue is that the trial court failed to consider and weigh the factors in 602.7B related to parenting time. The second issue is that the trial court entered a parenting time schedule that is not in the best interest of the minor children. The third issue is that the trial court entered a right of first refusal provision that is not in the best interest of the minor children. And finally, the trial court abused its discretion in denying Mr. Whitehead's motion to reconsider. Going up to the first issue, the trial court failed to consider and weigh the factors in 602.7B. As the justices know, 602.7 deals with allocation parental responsibilities, parenting time. Subparagraph B lists some factors that a trial court is to consider. Subparagraph B starts by saying the trial court is to consider all relevant factors. So anything that's relevant, the trial court's to consider. And then as guidance, the legislature lists several factors to consider, including subparagraph 17, which is a catch all that says they're to consider everything they deem relevant. In this particular case, the trial court's ruling failed to mention any factors, failed to summarize any evidence, failed to really give us any idea why they ruled the way that they ruled. It says, after consideration of law, case law, testimony, I'm ruling this way. The first district has had a case in the custody of GL. In that case, the mother had appealed, saying that the trial court failed to analyze the factors in 602.7. However, that court at least summarized some of the evidence and kind of let everyone know their thought process as to where they were at. And because of that, the first district held, well, the trial court summarized, so we know that the trial court actually considered the factors, and as such, were denying mother's appeal because the trial court demonstrated they actually weighed the factors in 602.7. In the case before you today, that was not the case. There was no summary of evidence. There was nothing to demonstrate that the court actually weighed the factors. Because of that, as an alternative to what we're asking for regarding to our second issue, we're asking this court to remand this case back to the trial court with instructions that the trial court consider and weigh the factors of 602.7. Moving on to the second issue. The trial court entered a parenting time schedule that's against, that is not in the best interest of the minor children. As you know, the state of the review is manifest weight of the evidence, which means the opposite conclusion is clearly apparent. As I'm sure the justices also know, 602.7b, the factors listed therein, are not a scorecard. We're by their weight evenly, they carry the same weight, and we kind of tally it up. If one parent has 7 and the other has 6, obviously the one with 7 should win. Children are not that black and white. And because of that, there are factors that probably should carry more weight than the others. Even considering that, the factors favor my client, Mr. Whitehead, and as such, the schedule that he proposed should have been utilized. I think everyone would agree, a child's physical safety, probably paramount. That's the first thing we should consider, is their safety. In 602.7, one of the issues or one of the factors is allegations of abuse, physical violence, against the child or a family member or someone in the child's household. In this particular case, there was an instance of physical violence that was admitted by Stephanie, in that shortly after the parties separated, Daniel came to the marital residence to drop off the minor children, and while there the parties had a discussion, Stephanie asked him a question about whether or not he was dating someone. He replied in an affirmative manner. In front of the children, she picked up a picture up front and threw it against the wall. Their youngest child started crying. Daniel reached down to try and comfort the child. Stephanie grabbed the child away. Child was still crying. Cut the child at risk by grabbing her away. Didn't care that she had a child crying, just continued to yell at my client. The violent act of throwing a frame in the presence of the children, while Stephanie argues, one, it was one time, and two, Daniel supposedly pushed her mother, which was not substantiated or wasn't proven at trial, like Daniel did admit it and there was no other evidence on that issue, shows that there's a higher risk of endangering the children's safety than Daniel. So keeping in mind that children's safety should be paramount, that factor favors Daniel over Stephanie. Ms. Campanella, in looking at the order, which is very detailed by the court, do you know if this was an order submitted by one of the parties, or did you both submit proposed orders and he signed one? I was not the trial attorney. My understanding was that there was one final parenting plan submitted and that's the one that was entered. Who submitted it? Excuse me? What do you mean there was one final parenting plan submitted? After the court made a ruling via letter, which I had attached my motion to reconsider, based on that letter, a final I am unclear as to who. Because in the final parenting plan, they clearly go through every step of the statute. I agree, there's not a, you know, I find it this one ways and that one ways, but it's so very detailed that it's clear that Yes, Your Honor. Okay. Thank you. You're welcome. Aside from physical safety, the next thing to consider regarding children would be their emotional well-being. And it's clear by the drafting of the words of 602.7 that a relationship with both parents are to have unrestricted parenting time unless proven to be against the best interest. So that shows that the legislature actually has it in their mind that it isn't a child's best interest to have a close and continuing relationship with both parents. So subparagraph 13, which deals with the willingness and ability of each parent to facilitate and is paramount just under physical safety. That factor favors Daniel. Throughout the entire case, you'll see Daniel was all about equal parenting time to ensure that the children continue to have a close relationship with both parents. Whereas Stephanie, at the beginning, after the parties separated, she limited Daniel's time with the children. It gradually built up to having equal parenting time beginning in the summer of 2015. And then Stephanie unilaterally changed the schedule in October 2015 without maybe making additional time for Daniel and the children to be together. She unilaterally stopped Sunday night visits on her own accord. Just because she decreed it, therefore it was. That's evidence that she is not, she was not trying to facilitate a relationship between the children and Daniel. But by the time this judgment is entered, the one that I just asked you about, dated June 19, 2017, it's called Final Parenting Plan and Judgment. In the area that you're just talking about, it says the parties agreed. So now it seems like we have the parties making an agreement that maximizing each parent's involvement and contact with all of their minor children is in the best interest of the children. So if the parents agree, why wouldn't we take the present agreement? And the very next paragraph says mother and father agree that they wish to be flexible about parenting schedules. So I'm having trouble with what might have later been agreed to with what you're arguing, which is past history, 2015. This is 2017. How do I resolve those issues? Very good point, Your Honor. The way you resolve it is that judgment that you're referencing that was entered in June was based off of a judge's ruling, and that judge's ruling looked at the past, or should have looked at the past. I don't know if he looked at the past, because his ruling doesn't reference it. But maybe the parties, after the letter, obviously, the parties got together and now they've agreed to certain things according to this judgment. I mean, I understand what you're saying as far as there's no, in the letter there's no indication. But it's certainly possible that the parties have gotten together after the letter in order to write this very detailed plan. It is possible, Your Honor. But what's at issue is what the court, the trial court used, utilized in making its decision with regard to the parenting time schedule. So that's where 2015 becomes relevant. And I understand your point. The parties, after the judge's ruling, agreed to really what should have been happening all along. Right. They could attend church with each parent during the designee. I mean, there's a lot of agreement in this particular judgment. Yes, Your Honor. One thing that is not agreed to, and the important thing that is not agreed to, is the parenting time schedule. The allocation and I understand the eight hours and the things you raised in your brief. Yes, ma'am. And so we talk about the time frame, how Stephanie unilaterally moved the parenting time schedule without considering what the children needed at the time. And actually, after that change, the guardian unilaterally spoke with the children and all three of them agreed to the parenting time schedule. But none of them wanted to spend that extra time with their father. And I understand children, you know, certain ages, certain maturity levels. But the GAO said that none of the children were coerced and they were clear that they missed spending that time with their dad. And based on the judge's ruling, the trial court's ruling, it's clear they didn't consider that because that factor clearly favors Daniel. So we have the two top factors that the court should consider favoring Daniel. But the overall spectrum of 602.7, if you were willing to, you know, keeping in mind, it's manifest way to the evidence, which means the opposite conclusion is clearly apparent. If one party has one factor that favors them and another party has seven that favor them, keeping in mind, that the one factor that favors them is not the physical safety, because the physical safety of the child should be paramount. You know, that should be the number one concern, then the emotional health. If the one that favors them is just the ability to put their needs ahead or put the child's needs ahead of their own because of their work schedule and all the other factors favor one party, the opposite conclusion is clearly apparent. It's apparent that Daniel should have been given more consideration than what he was and that it's apparent that it's in the children's best interest to have equal parenting time, which is what Daniel had recommended in petitioner's exhibit 24, which is at C-134. That's the schedule that Daniel believes to be in the best interest of the minor children, and it's an equal parenting time schedule. So the children spend, like you said, there was an agreement in there that it is in the children's best interest to have that type of time with the parents, but that's not what the trial court ordered. Well, it's tough when kids go to school. I mean, how do you do that, transferring kids back and forth in school, school time? It's almost impossible with three kids. I'm just imagining if I had three kids, it wouldn't be that way. Let me ask you this. They agree on the eight hours. The language of the parenting plan says the parties agree right of first refusal for a period in excess of eight hours. I just don't understand why the language says the parties agree and we're arguing about the eight hours. It sounds to me, Your Honor, there was a scrivener's error in the order. That's the only thing that I could explain it, because Stephanie's schedule kind of jumped into the right of first refusal since you mentioned it. Stephanie's work schedule is one that is very flexible, and because of that, she could work seven and a half hours and interfere with Daniel's time with the children. In conclusion, can I put a conclusion on my argument? Go ahead. In conclusion, Justices, what Daniel is requesting is that with regard to the parenting time schedule, that the Justices amend the court's order of the parenting time schedule to what's contained in Petitioner's Exhibit 24, which is at C-134 in the record. If the court refuses to do that, that the Justices remand this case back to the trial court with direction that the trial court is to analyze the evidence under the factors of 602.7 with regard to the right of first refusal, that it would be four hours instead of eight. And I didn't touch on my motion to reconsider, but with regard to that, that the trial court, that the Justices remand down to the trial court with instruction to apply the income shares analysis. Could you state again what the citation that the exhibit was? Yes, sir. It is C, it's in CAT-134. Thank you. You're welcome. Thank you, Counsel. May it please the Court, Counsel, my name is Jerry Reed. I'm with the law firm Reed, Heller, Mansfield & Gross in Murfreesboro, Illinois. I represent the respondent, Appalee Stephanie Newcomb Whitehead. Petitioner raises four issues on appeal. I'm going to take the last one first, and that is whether or not it has to do with a motion to reconsider, which has to do with what proper formula the court should have used for child support. Their position is that the court should have imposed child support based upon a statute that was not in effect at the time of the ruling. The current child support statute, Public Act 99-764, specifically stated it was to be effective July 1, 2017. There's no wiggle room to it. The trial was December 12 and concluded on February 17. The letter ruling was March 15, and the judgment was entered all prior to the July 1 date. Our position is to apply a statute that's not in effect at the time of the ruling would be an abuse of discretion, but to follow the statute that was in effect at the time of the ruling would be what the trial court is obligated to do under the law. Petitioner is unhappy with an eight-hour right of first refusal. He wants it to be four hours, and because it's not four hours, he's represented to this court that it's an abuse of discretion. Perhaps as a preliminary to this discussion, we should all be reminded that legislatively, the trial court did not even have a right to impose a right of first refusal until the current law went into effect, giving them the right. The argument is made that Stephanie interfered with Daniel's right to see the children, his relationship with the children, so that rains down on the schedule and the right of first refusal. I want to just touch upon it real briefly because some of what was said is correct, and some of it was not counsel, perhaps not being trial counsel. Originally, there was a problem of visitation that got resolved quickly between the parties. The record shows that Daniel imposed a schedule that he wanted moving forward. The record was that as of September, my client objected to the schedule he wanted, which included the children on her weekend going to his house on Sunday night. She said, let them just spend Sunday night at my house and go to school. We had to go to court on that. We had to have a hearing on that in front of Judge Williamson, and Judge Williamson found that it was in the best interest of the children that they spend their Sunday night during the school year at their mother's home. So what they're representing to be an interference by my client was already found by the trial court to be in the children's best interest. They also complained in their brief that when Daniel's schedule changed, that he wanted to have the children on Mondays instead of them going to school, that my client would acquiesce. The underlying fact is these children were being homeschooled by my client's mother, and as I appear, Your Honors, I don't remember whether she had other commitments on Friday or not, but the end result was Daniel did not work on Fridays prior to their separation, and so the children spent Fridays with their father. His work schedule changed, and he went to my client and said, I want to have them on Mondays instead of Fridays, and then complained that she wouldn't cooperate to facilitate that. Our problem with that is my client's not the teacher. You want to change the schedule, talk to Grandma, who's the teacher, and see what she can do. Don't come to Stephanie and say, you've got to change it, because she's not the one responsible for that or the one in charge of that. But these are the examples that they give to suggest my client has interfered with Daniel's schedule. Mr. Reed, I want to ask you, because the letter agreement, well, first of all, let me go back to your very first argument. Is it your position that none of these, that the court was not obligated and that we should not remand because the statute was not in effect at the time of the judgment? Your Honor, our position is this court should affirm the trial court decision in determining the appropriate child support, because in determining it, the trial court determined it based upon the law in effect at the time it was made. Okay. I apologize. I'm not talking about the child support issue. I'm talking about the factors, the weighing of the factors. Okay. I'm sorry, your question is? That statute was part of the new act as well. Yes, Your Honor. And is it your position that their argument about weighing the various factors then should not apply either because it wasn't in effect at the time? No, your Honor. I think the court was obligated to try the legislative factors that are there to determine best interest. Most of them, if not all of them, were under the old act also. Right. Where counsel and I perhaps disagree is she takes the position that unless the court has a detailed analysis of the evidence applying to each factor, then the court did not apply those factors, and I don't think that's what the case cited stands for, and I don't think that's the law. Okay. In the letter that was issued, and again, I'm looking at the agreement of the parties because it appears that at least you were part of this and that maybe you drafted the parenting order. I did, your Honor. Okay. It says that regarding the allocation of parenting time, as this court understands, the parties' parenting plans are stipulated and the court ratifies and approves them. So, again, I see a lot of agreement that was going on between the parties as opposed to what we're hearing now, and I'd like you to explain that if you could. I'd be happy to, your Honor. Whether there were any discussions between the parties after the court made its letter ruling, I'm unaware of that. The letter ruling by the court in the last paragraph directed me to prepare the final documents, which I did prepare. I went to the parenting plan that is used in the office. I incorporated the court-specific terms in it, and other than that, I used standard language. As we appear before this court with your comments, perhaps opposing counsel should have objected to some of it showing it as an agreement because I can't say that some of it was an agreement. Some of it was. They both wanted joint parenting, and so that part of it would appropriately be by agreement. But in other places that I show something to be by agreement, that was more the form I used as opposed to any discussion that I'm aware of the parties had post-judgment or post-hearing. Well, nevertheless, the court entered it as written. They did, your Honor, and counsel signed off on it. And there's been no objection to it other than this appeal? Yes, your Honor. Okay, thank you. The right of first refusal, as I was saying, the legislature gave the court the ability to do that. The court exercised its discretion in putting down the right of first refusal. The only basis for an abuse of discretion finding on that is because it's not what Daniel wants. There's no reason, there's no factual reason, there's no argument made why an eight-hour first refusal is not appropriate. They could have a four-hour right of first refusal, and they say, well, she could only work three-and-a-half hours, and he loses out on his time. The threshold of that is it's not his time. This eight hours is not his time unless the other side is gone for eight hours, and then it becomes time that he has a right of first refusal. But if they're only gone six hours, it's not his time. I could appreciate if we had a right of first refusal for an hour. Most people would probably agree that's kind of intrusive, that's not real practical. I would concur if we had a 30-day right of first refusal. That would make sense under most facts. But four hours, six hours, eight hours, ten hours, it would seem to me you need some pretty compelling facts to convince any court that that's not within the realm of reason and is certainly not an abuse of discretion. In terms of the time allocation, I think the starting point to that review should be looking at the time the court did award between the parties. The trial court awarded to Daniel every week, 8 a.m. Monday to 8 a.m. Tuesday, and alternating weekends from Friday until Monday. During the school year, every 14 days, he had five nights and six days, and that's what he's representing this court to be an abuse of discretion, not because he said Stephanie's an unfit mother and she should only have every other weekend, but because Daniel didn't get what he wanted, which was equal time. During the summer, the court gave him the Sunday nights that we had to go to court for on temporary leave. At Stephanie's request, she has to work on Mondays. The kids don't have school, so let them go to their dads instead of getting up early. So during the summer, Daniel has six days every two weeks and six nights every two weeks, and that's what we're here arguing is an abuse of discretion because it's not what Daniel wanted, which was seven days and seven nights. His schedule that he's asking this court to adopt is kind of interesting. What he wants the court to adopt is alternating weekends from Friday at 8 a.m. until Monday at 8 a.m. Then each week, you'll have Monday from 8 a.m. until Tuesday at 8 a.m., and then the parties are going to rotate Tuesday at 8 a.m. until Thursday at 8 a.m., and then my client has 24 hours from Thursday to Friday. So under his proposal, they've got every two-week periods. They're rotating weekends. They're rotating the midweek schedule, but again, this is what Daniel wants, and not to give him what he wants seems to be an abuse of discretion in his mind. The law does not require the court to recite the evidence. The law does not require the court to recite the evidence in context to the legislative factors. What is important and what is omitted in this case is any basis based upon the evidence that the court did not have evidence in front of it or that it did not weigh that evidence with the legislative factors, and we don't have that argument. We just have that he didn't list what they were, which he's not required to do. As counsel has indicated, in determining the children's best interests, it's not simply a matter of tallying up these legislative factors and trying to determine which favored more because they're not given equal rate. If you read Daniel's brief by what he's represented to the court, darn near every factor favored him because most of what he represented was his testimony. If he would have set forth those same legislative factors based upon the Guardian-Lytton report or the addendum to the Guardian-Lytton report, there would be a different conclusion reached as to which factor favored who. But back to where I started the discussion on the time allocation. This isn't where he gets every other weekend and he says I should get more. He's getting a significant block of time already, six days and six nights in the summer, six days, five nights during the school year. Perhaps among the other things what the court rate is providing these children a little stability in providing maximum time for both parents and perhaps in determining what that stability should be, they found rotating every weekend and rotating every Wednesday and Thursday didn't really give them the stability they needed. The law presumes that the trial court knew what it was doing. It knew the law and followed it and it gave proper consideration to the statutory factors. There has been no argument made. There is no evidence to suggest the court did not do that. We ask this court to affirm the trial court decision. Thank you. Thank you. Just to address a few things from my colleague. The motion to reconsider, it is by abuse of discretion. One factor, and I understand opposing parties' position, the order was entered at a point in time when the old statute was in effect. However, this court has found that a change in law from the original hearing is a reason to file a motion to reconsider. The law had changed and it was clear it was going to change. In the time period that Daniel is paying child support, there was more time he was paying child support where the new law was in effect as opposed to when the old law was in effect. Meaning that because of the time frame, the statute in effect or the majority of the time Daniel is paying child support is the income shares. It is not a matter of nobody knew the law. In June of 2017, nobody knew what the law was going to do. It had been out for a while. There had been a lot of discussion about it. It was not a surprise that income shares was coming up. So it is an abuse of discretion that the court didn't consider that. And we would ask that this court remand it back to the trial court with instruction to order the child support based upon the income shares model in Section 505. But you agreed that the decision of the court was prior to the statute. Yes, ma'am, I did. And your motion to reconsider, was that also ruled on prior to the statute? No, I believe, if I remember correctly, the procedural posture, the motion to reconsider was after. We had filed the motion to reconsider after the law came into effect. But if we accept your argument that everybody knew it was coming, etc., etc., wouldn't this court have to start remanding all kinds of cases because decisions were made in May or April or, you know, where's the cutoff, so to speak? I mean, everybody knew it was coming, but it hadn't been signed in as a very clear effective date by statute. Very good point. But child support is a little bit different than any other area of the law. While both have long-lasting effect, with child support not only does it have a long-lasting effect, it has a long-lasting effect on children. And I think because of that, that makes it different than any other regular statute. With regard to my colleague mentioned a change of schedule from the Monday to Friday. Daniel was exercising parenting time every Friday because he was off, I'm sure the justices have read my brief, my client is a registered nurse. So he had off Fridays. His work schedule changed, and now he had off Mondays. The children were being homeschooled four days a week by their grandmother. In my review of the record, and again, my colleague's got a little bit of an edge on me because he was there during the proceedings, I read the record, and what I remember from the record, there was no evidence presented that suggested grandma couldn't move the time from Tuesday to Friday as opposed to Monday to Thursday. So I don't think the kids still would have had school four days a week. There would have been no detriment to their education. The detail analysis, that's true. The court doesn't have to go, all right, subparagraph 1 of 602.7b says, you know, the parent's wishes, and then analyze it, and then go to subparagraph 2. But in the custody of GL, the trial court at least summarized the evidence which led the first district to the conclusion that the trial court actually applied the evidence to the facts, which was not done here. The right of first refusal, my colleague says, well, four can be manipulated just like eight. Well, four is a lot harder to manipulate than eight is when you make your own work schedule and you work full time. Finally, the stability, my colleague argues, well, you know, the trial court wanted the children, probably may have wanted the children to have stability. Well, we don't know what the trial court wanted because the trial court didn't tell us how they analyzed Daniel's proposed schedule, which goes back to my point that it should be remanded down with instructions for the trial court to actually consider and analyze the facts under section 602.7. Thank you, Justices. Thank you. We appreciate the briefs and arguments of counsel. The case under advisement, Commissioner Miller. Thank you.